UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**JAMES R. PATTON**                                                                    **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 5:23-CV-P94-JHM**

**KEVIN SMITH** *et al.*                                                   **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss some claims and allow others to proceed.

**I.**

Plaintiff James R. Patton was incarcerated as a convicted prisoner at Kentucky State Penitentiary (KSP) when he initiated this action. Plaintiff sues KSP-Wellpath Dr. Kevin Smith; KSP-Wellpath APRN Karen Ramey; KSP-Wellpath Nurse Practitioner Rick Richards; KSP Grievance Coordinator Robin McAlister; and KSP Warden Scott Jordan. Plaintiff sues these Defendants in both their official and individual capacities.

Plaintiff makes the following allegations in the complaint:

[] Dr. Kevin Smith, Karen Ramey, and Rick Richards denied me treatment for my hepatitis C Issue due to a write up date: 12-6-22.

[] Karen Ramey violated the hippa Law by talking about my disease in front of correctional staff (non-medical) . . . .

[] Karen Ramey – stating that I was currently getting treatment for hepatitis A/B on date 4/3/23 while medical records show otherwise.

[] Rick Richards states I may appeal to the medical director. I was never told how to do so, nor I was I told about how bad my hepatitis levels were till I had to pay . . . to open records to retrieve my own medical records.

> []Scott Jordan is in violation of (institutional physical conditions) – safety or sanitation, while being held in 3 Cellhouse RHU . . . . I have had black mold growing around my toilet and gnats flying around due to leaking. I have filed grievances they got rejected and sent back on 6/20/23. I picked up the black mold and showed it to [a caseworker] he states that is descusted mind you I have been in here going on 2 months today . . . .
>
> []Robin McCalister Grievance Coordinator – [] not bringing grievance aid to do requested rounds/ and denying my medical grievances with my life in danger due to my hepatitis C disease!
>
> Robin McCalister: I spoke directly to her to help me file medical grievance and was denied. . . .

As relief, Plaintiff seeks damages and "proper medical treatment."

Plaintiff attaches to the complaint a letter addressed to "Medical Director" which contains additional allegations regarding the denial of treatment for Hepatitis C (DN 1-1). In that letter, Plaintiff states that he was "wrote up" on December 6, 2022, for "possession of a syringe that will exclude patient from antiviral medication treatment consideration until December 2023." *Id*. Plaintiff states that his disciplinary records show that it is another inmate who "was said to have pulled the above said 'syringe' out of his buttocks . . . ." *Id*. Plaintiff then states that Defendant Ramey wrote in his medical records on April 3, 2023, that "[a]ccording to a quick perusal of the write-up, [Plaintiff']s story seems to be backed up by the narrative of the write up." *Id*. Plaintiff further states that his medical records from May 11, 2023, show that Dr. Smith noted that Plaintiff "would benefit from definitive treatment for chronic HCV infection" but that his "records indicate that he was convicted of handling a facility syringe in December 2022. Based on (D.O.C.) guidelines this event makes him ineligible for HCV treatment with direct acting antivirals (the current standard of care nationally) before December, 2023." *Id*. Plaintiff finally states that his May 12, 2023, medical records show that Dr. Smith wrote "further testing in patient with HCV . . . indicating cirrhosis." *Id*.

2

Plaintiff also attaches to the complaint his "Write Up and Investigation" from December 6, 2022. This report shows that Plaintiff was charged with "possession or promoting of dangerous contraband." On the report, Plaintiff writes, "I was wrote up on Dec 6, 22. I was not convicted of any type of write up it states I was till the middle of January."

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to

conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. KSP Defendants

##### 1. Official-Capacity Claims

Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). When state officials are sued in their official capacities for monetary damages, they are not "persons" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim). State officials sued in

their official capacities for damages are also absolutely immune from § 1983 liability under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. at 169 ("Th[e] Eleventh Amendment bar remains in effect when State officials are sued for damages in their official capacity.").

For these reasons, Plaintiff's official-capacity claims against Defendants Jordan and McCalister will be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary damages from Defendants who are immune from such relief. Moreover, any request for injunctive relief is moot since Plaintiff has been transferred to another facility. *See, e.g., Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

### 2. Individual-Capacity Claims

#### a. Warden Jordan

Plaintiff alleges that Warden Jordan is responsible for the black mold and gnats that were allegedly in his cell at KSP. The Court construes this as an Eighth Amendment conditions-of-confinement claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies to inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834, 825, (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Instead,

"[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

An Eighth Amendment conditions-of-confinement claim has an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To state a conditions-of-confinement claim pursuant to the Eighth Amendment, a plaintiff must allege (1) a deprivation that is objectively "sufficiently serious," for example, that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," (the objective component) and (2) that the defendant prison official has a "sufficiently culpable state of mind," specifically one of "deliberate indifference" to inmate health or safety (the subjective component)." *Farmer*, 511 U.S. at 834 (citations and internal quotations omitted).

Exposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment. *See Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (discussing that mold in the ventilation system violates the Eighth Amendment); *cf Causey v. Allison*, No. 1:08-cv-155-RHW, 2008 U.S. Dist. LEXIS 72071 (S.D. Miss. Sept. 9, 2008) (concluding that there was no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but admitted that "he has had no medical problems resulting from the black mold"); *McIntyre v. Phillips*, No. 1:07-cv-527, 2007 U.S. Dist. LEXIS 77859, at *8 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that "some exposure to black mold is a risk society has chosen to tolerate").

Here, Plaintiff does not allege that black mold in his cell was in the ventilation system or that he had any medical problems resulting from the black mold. He has therefore failed to provide information that would permit the Court to infer that the black mold "created a substantial risk to his health." *See Rogers v. MacLaren*, No. 1:20-cv-263, 2020 U.S. Dist. LEXIS 112263, at *21

(W.D. Mich. June 26, 2020). Plaintiff's general "allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health." *Id*. Moreover, the Court can find no case suggesting that alleging the presence of gnats, without more detail, is sufficient to satisfy the objective component of an Eighth Amendment claim.

Thus, because Plaintiff has failed to satisfy the first prong of an Eighth Amendment conditions-of-confinement claim, the claim must be dismissed for failure to state a claim upon which relief may be granted.

### b. Robin McAlister

Plaintiff's claims against Defendant McAlister for denying his grievances and failing to help him file a medical grievance also fail to state a claim upon which relief may be granted. Prisoners do not possess a constitutional right to a prison grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. Oct. 30, 2003) ("there is no inherent constitutional right to an effective grievance procedure") (citing cases). For this reason, the denial of a grievance or the failure to act based upon information contained in a grievance fails to state a claim under § 1983. *Gibbs v. Laughhunn*, No 16-1771, 2017 U.S. App. LEXIS 13760, at *5 (6th Cir. Feb. 2, 2017); *see also LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional rights to an effective grievance procedure").

For these reasons, the Court will also dismiss Plaintiff's claims against Defendant McAlister for failure to state a claim upon which relief may be granted.

### B. Wellpath Defendants

Upon review of the complaint and its attachment, <u>the Court will allow Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical need (Hepatitis C) to proceed against Defendants Smith, Ramey, Richards in both their official and individual capacities</u>. In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

Plaintiff also alleges that Defendant Ramey violated his right under the Health Insurance Portability and Accountability Act (HIPAA) by talking about his Hepatitis-C diagnosis in the presence of non-medical officers. Although the Sixth Circuit has not decided this issue, other circuit courts have concluded that there is no private right of action under HIPPA. *Thomas v. Univ. of Tenn. Health Sci. Ctr.*, No. 17-5708, 2017 U.S. App. LEXIS 24714, at *4 (6th Cir. Dec, 7, 2017) (citing *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809 (11th Cir. 2011); *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *Miller v. Nichols*, 586 F.3d 53, 59-60 (1st Cir. 2009); W*ebb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (per curiam)). For this reason, the Court will dismiss Plaintiff's HIPAA claim against Defendant Ramey for failure to state a claim upon which relief may be granted.

### IV.

For the foregoing reasons, **IT IS ORDERED that Plaintiff's claims against Defendants Jordan and McAlister are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1),(2) for failure to state a claim upon which relief may be granted and for seeking damages from defendants immune from such relief and that his HIPAA claim against Defendant McAlister is**

**DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted**.

Since no claims remain against them, the **Clerk of Court** is **DIRECTED to terminate Robin McAlister and Scott Jordan as parties to this action**.

The Court will enter a separate Service and Scheduling Order to govern the claims it has allowed to proceed.

Date: October 18, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants Smith, Ramey, and Rickards
4414.011