**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
*ELECTRONICALLY FILED*

JAMES R. PATTON                                                                          **PLAINTIFF**

v.                                                                   **CIVIL ACTION NO. 5:23-CV-P94-JHM**

KEVIN SMITH *et al.*                                                                      **DEFENDANT**

---

**DEFENDANTS KAREN RAMEY, RICH RICHARDS, AND KEVIN SMITH 'S**
**MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

---

Come now the Defendants, KAREN RAMEY, RICH RICHARDS, and KEVIN SMITH (collectively, "the Defendants"), by and through their attorneys, Kopka Law Group, and submits this Memorandum in support of their Motion for Summary Judgment pursuant to FRCP Rule 56.

**I. MATERIAL FACTS**

*A.      Procedural History*

This action has been initiated by a pro se Plaintiff. Per the Court's review (DN 13), the Court permitted the Complaint against Defendants Smith, Richards, and Nurse Karen Ramey, in each's official and individual capacities for alleged deliberate indifference to a serious medical need in violation of Plaintiff's Eighth Amendment right.

*B.      Plaintiff's Allegations*

Plaintiff alleges his Eighth Amendment right to not be subjected to cruel and unusual punishment has been violated by Defendants through denial of his preferred treatment for hepatitis C due to being written up for possession of an institutionally-made syringe on December 6, 2022. (DN 1, p. 4). Plaintiff alleges that he was provided vaccines for hepatitis B, though he has hepatitis C. (DN 1, p. 10) However, this allegation does not state which Defendant

1

administered the allegedly-incorrect vaccine.  Plaintiff alleges that the medication Nurse Ramey is providing is damaging his liver further. [DN1] He provides no medical proof to substantiate this allegation.  Defendants have answered that they are not responsible for disciplining Mr. Patton; they are medical staff members, not correctional. They have no authority to permit or deny the Plaintiff to be involved in an antiviral medication treatment program, nor any authority to appeal the findings of the disciplinary officers. They did not deny Plaintiff the antiviral medication; the disciplinary committee did. Therefore, Defendants deny that they have violated any Constitutional right, nor provided cruel and unusual punishment to Mr. Patton in this manner. Plaintiff's allegations are therefore claims upon which relief cannot be granted. Defendants made all medical treatment decisions, where applicable, to the best of their abilities, and this alleged denial of Plaintiff's preferred treatment would have been based on a protocol they were bound to follow.  Following the determined protocol would not have comprised substandard care, medical negligence, gross negligence, or a violation of Plaintiff's Constitutional rights

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a) The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* at 322. If the record taken as a

whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; it must produce evidence which would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law [where] the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof." *Celotex*, 477 U.S. at 317–18

### III.  ARGUMENTS

*A.      Patton has Failed to Exhaust his Administrative Remedies Prior to Filing Suit.*

"No action shall be brought with respect to prison conditions under section 1983 of this title, or under any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a). An inmate cannot fail to file a grievance or abandon the process before completion and then claim exhaustion or claim that doing so too late would be futile because of an administrative limitations period. *See Hartsfield v. Vidor*, 199 F. 3d 305, 309 (6th Circuit 1999); The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey v. Helman,* 196 F.3d 727, 733 (7th Cir.2000). There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (internal citations omitted). Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *Id.* at 216.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

"Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established administrative process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford v. Ngo*, 548 U.S. at 87.

"[A]n inmate does not exhaust available administrative remedies . . . when the inmate filed such a grievance but 'did not appeal the denial of that complaint to the highest possible administrative level[.]" *Id.* (quoting *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). "'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Woodford v. Ngo*, 548 U.S. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). An inmate must demonstrate that he has exhausted all available administrative remedies; when he fails to do so, dismissal of the complaint is appropriate. *See, e.g.*, *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003).

4

Plaintiff has produced evidence that he filed the following grievances regarding healthcare pertaining to his claims at bar [DN6]:

| | | |
|---|---|---|
| 05/18/2023 | #23-05-010-H | Rejected as a non-grievable adjustment committee decision; |
| 05/18/2023 | #23-05-011-H | Rejected for not clearly stating action requested; |
| 06/09/2023 | #23-06-006-H | Rejected for failing to provide date of incident; |
| 06/14/2023 | #23-06-007-H | Rejected for multiple actions requested including non-grievable issues (transfer); |
| 06/14/2023 | #23-06-008-H | Rejected for not requesting any specific action be taken; |
| 06/20/2023 | #23-06-009-H | Rejected for multiple actions requested, eventually allowed on 6/27/2023 but never appealed; and |
| 06/20/2023 | #23-06-010-H | Rejected for multiple actions requested eventually allowed on 6/27/2023 but never appealed. |

Plaintiff filed his Complaint on June 30, 2023 [DN1].

Thus, the only valid grievances which followed the basic filing requirements of 14.6 pertaining to the Plaintiff's claims were #23-06-009-H and #23-06-010-H.  Plaintiff informed the Court he had been transferred to Western Kentucky Correctional Complex on August 21, 2023 [DN8] however he failed to appeal those grievances prior to his transfer.  Additionally, KDOC Policy 14.6 provides that upon transfer "To continue a grievance, the grievant shall notify in writing the Grievance Coordinator at his institution that he wants to continue a health care grievance prior to the transfer." *Exhibit 1, 14.6(M)(2)(a)*  The policy also states, "A grievance shall be discontinued if the written notice is not provided as required in this section, unless the grievant has already appealed the grievance for final administrative review." *Exhibit 1, 14.6(M)(2)(c)* Patton's failure to appeal grievances #23-06-009-H and #23-06-010-H resulted in their discontinuance upon his transfer prior "to his appeal to the highest possible administrative level." *Supra*  Thus he has failed the basic requirements of 42 U.S.C. § 1997e (a).  However, Plaintiff filed his Complaint on June 30, 2023, only three (3) days after his two grievances were accepted for informal resolution.  Plaintiff needed to receive an informal resolution response, appeal to the

Healthcare Grievance Committee if dissatisfied with the informal resolution and then appeal for administrative review to the medical director if still dissatisfied. *Exhibit 1*   Only then would Plaintiff have exhausted his administrative remedies, making his claim ripe for filing with this Court.   Having failed to do so, his claims must be dismissed.

Plaintiff also failed to name any Defendants in the grievances he filed. The requirements of what must be included in a prison grievance are defined by the prison's grievance process, and not the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007).   In *Jones*, the United States Supreme Court rejected the Sixth Circuit's previous rule that all potential lawsuit defendants must be *per se* named in the administrative grievance process. *Id.* at 218-219. The Court explained that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA that define the boundaries of proper exhaustion." *Id.* at 218.6  Subsequently, the Sixth Circuit held that, ordinarily, *Jones* would bar a lawsuit under the PLRA where the prison's grievance procedure required the inmate to list the names of the persons involved. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). However, the Court also held that the exhaustion requirement was waived in that particular case because the prison answered an otherwise procedurally defaulted claim on the merits. *Id.* at 324-325.

KDOC's Policy 14.6(K)(1)(a)(4) requires that "The grievant shall include all aspects of the issue ***and identify all individuals*** in the "Brief Statement of the Problem" section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1." *Exhibit 1, emphasis added*  Even taking the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Plaintiff ever filed a grievance as it relates to Defendants Ramey, Richards or Smith. Plaintiff's two grievances on this issue does not mention these Defendants at

all. Applying *Jones* and *Pramstaller*, Plaintiff failed to exhaust his administrative remedies as it relates to Ramey, Collins and Smith, even if he had otherwise complied with KDOC's grievance process by appealing all the way through final administrative review.  Because of this, all claims against Defendants Karen Ramey, Rich Richards and Kevin Smith should be dismissed.

**B.      *Plaintiff Has to Provide  Evidence of Any Act or Omission of Defendants Supporting His §1983 Claims of Deliberate Indifference in Either their Individual or Official Capacities.***

In order to establish a § 1983 "deliberate indifference claim, a plaintiff must show that: (1) he was deprived of a right, privilege, or immunity secured by the Constitution of the United States; and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57 (1978); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). To prove a violation … which "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on [a prisoner] by acting with 'deliberate indifference'" to the prisoner's serious medical needs, a plaintiff must establish both the objective and subjective components of the standard.

The indifference must be substantial; that is, it must be an offense to the evolving standards of decency. *Flagg Bros.,* 436 U.S. at 106; see also, *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995). Moreover, federal courts are generally reluctant to second-guess medical judgments where a prisoner has received some medical attention, and the dispute is over the adequacy of that treatment. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). However, courts may still consider whether treatment was "so inadequate as to amount to no treatment at all." Id.

The objective prong requires that a prisoner show the existence of a "sufficiently serious" medical need. This is defined as a need "that has been diagnosed by a physician as mandating

7

treatment or one that is so obvious that even a layperson would easily recognize the necessity of a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (internal quotation marks omitted). The subjective component, by comparison, requires a showing that "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [he or she] did in fact draw that inference, and that [he or she] then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Negligence alone is not sufficient to state a claim of deliberate indifference. See *Johnson v. Karnes*, 868 F.3d 868, 875 (6th Cir. 2005).

It is undisputed that Plaintiff was assessed with a diagnosis of Hepatitis C and was being followed with regular assessments through the chronic care clinic. However, in December of 2022 Plaintiff was caught handling an institutionally made syringe which precluded him from treatment with any IV medications for 12 months (DN 1, p. 13). Despite the protests of the Plaintiff, he was found guilty of these charges at a hearing held on January 19, 2023, and his conviction was upheld after a due process review by the warden Scott Jordan on January 23, 2023. *Collective Exhibit 2* Therefore, Defendants Ramey, Richards and Smith were not responsible for disciplining Mr. Patton; they are medical staff members, not correctional. They have no authority to discipline the Plaintiff, nor any authority to appeal the findings of the disciplinary officers. They did not deny Plaintiff the antiviral medication; the disciplinary committee did.

Subsequent to the disciplinary action, Plaintiff was seen for his quarterly chronic care follow up where the Plam Notes indicate he should continue to be followed by the chronic care clinic until such time as he is eligible for consideration in December 2023. Nurse Ramey noted patient should "continue current cc treatment plan." *Exhibit 3, p. 4*

January 13, 2023, seen for chronic care follow up.  Plan notes indicate: "HCV: Continue labs, per protocol. Goal for APRI score to improve <0.7 Will refer for treatment evaluation. Follow up in 90 days.  He is advised that 3 doses of 15mg Mobic is not enough to call medication a treatment failure. Continued compliance encouraged. He verbalized understanding." *Exhibit 3, p. 11*

On April 3, 2023, Karen Ramey saw Plaintiff for his annual H&P and chronic care evaluation.  She noted "HCV: Continue labs, per protocol. Goal for Improved APRI score <0.7. Follow up in 180 days. *Exhibit 3, p. 23*  On April 11, 2023, a chart review was conducted by the medical director, Kevin Smith, MD, who noted Plaintiff should continue chronic care clinic, cease taking all NSAID medications and also be referred to KY DOC addiction counselor team for evaluation. *Exhibit 3, p. 16.*  Dr. Smith also reviewed plaintiff's chart to evaluate his lab test (HCV FibroSure). *Exhibit 3, p. 35,* which he reported in the plaintiff's chart on May 12, 2023.  Based on that review, Dr. Smith recommended:

1. Likely compensated cirrhosis 2/2 chronic HCV infection.
2. Check AFP.
3. Repeat liver u/s for HCC surveillance.
4. Would link care to hepatologist/GI at some point (need for esophageal variceal monitoring).
5. Consider stopping all NSAIDs (on celecoxib currently).  *Exhibit 3, p. 41*

In an additional note, dated May 12, 2023, He noted Plaintiff was still in restrictive housing but recommended referral to the MAT-LOC team and possible transfer to facility with an established substance abuse program upon release from seg. *Exhibit 3, p. 43*

On June 6, 2023, Plaintiff was administered the "TwinRX" vaccine, a combined vaccine used to prevent Hepatitis A and Hepatitis B infections in adults, adolescents, and children. *Exhibit 3, p. 51.*  On July 11, 2023, Dr. Smith made the following entry after a chart review:

1. Patient not present.

9

2. Mr. Patton was discussed in f/u at the MAT-LOC team meeting on 07/07/2023.

3. He has chronic active HCV disease with a HCV Fibrosure of F4 (indicating possible cirrhosis) and an u/s which shows splenomegaly (a finding that also supports possible cirrhosis.

4. He is currently in RHU after being convicted of handling a syringe in December 2022.

5. He was evaluated by Addiction Services of Kentucky (ASK) and findings were consistent with a **severe opioid use disorder.**

**6. He was approved for substance abuse services in 2021 but was removed 2/2 violent/aggressive behavior.**

7. The MAT-LOC team wants to give Mr. Patton the best opportunity for successful treatment of HCV. A plan for successful treatment would include ongoing social/mental/emotional support from ASK and an evaluation for MAT. He is likely not to be a candidate for re-enrollment in group substance abuse treatment but he could benefit from individualized counseling.

8. If he does not pick up additional violations, he may be released from RHU around 08/20/2023.

**9. We will request that the on-site somatic provider have a conversation with Mr. Patton to gauge his commitment to both HCV treatment, active participation with an addiction services plan and willingness to be evaluated for MAT.**

**10. The patient will be presented in f/u with the MAT-LOC team in September 2023.** *Exhibit 3, p. 53.*

He was seen for chronic care again on July 13, 2023, by Karen Ramey, APRN who charted: "Note from Dr. Smith reviewed with patient. He is agreeable to proceed with plan and has made the commitment to getting involved with MAT and being compliant with HCV treatment. Follow up with patient after plan for HCV treatment finalized." *Exhibit 3, p. 63.* On July 23, 2023 Patient's chart was discussed at the MAT-LOC team meeting "even though he was not scheduled to be discussed again until September 2023." The ASK team "reports that their team met with the patient on 07/17/2023 to discuss commitment to recovery. Patient states that he is interested in SAP and wants to maintain recovery after release." *Exhibit 3, p. 64*

Plaintiff was released from RHU on August 15, 2023, and transferred to Western Kentucky Correctional Complex in order for Plaintiff to be allowed to participate in MAT, achieve sobriety

10

and allow him to maintain compliance with the DOC policy on intravenous medications once eligible for treatment. *Exhibit 3, p. 69.* (RAMEY DONE HERE?)

Plaintiff's next 90-day chronic care evaluation was performed on October 19, 2023, by Anna D'Amico, MD wherein she noted:

> HCV - Maintain and monitor hepatic function panel, platelets, and PT/INR. Advised pt to stay clean i.e., no drugs, no alcohol, no sex, and no new tattoos. Patient will remain asymptomatic until next Chronic Care Clinic. APRI 1.78 Goal APRI Instructed on limited use of NSAID's, Orange Juice, Vitamin C, and Iron. Must abstain from write ups and have clear conduct for 1 year to remain eligible for treatment. Will refer to committee for recommendations for treatment of HCV. *Exhibit 3, p. 85*

On December 6, 2023, approaching the expiration of his DOC ineligibility for intravenous drug treatments, Dr. D'Amico noted: "Pt Is wanting to be referred for HCV treatment. He has been free of any misconduct and has elevated APRI scores." "HCV - will refer pt for treatment recommendations." However, upon further review it was determined that Plaintiff had been written up on November 19, 2023, by DOC staff for "STG (security threat group) related tattoo or tattoo paraphernalia" involving a new tattoo received some time after his transfer to WKCC as depicted by Plaintiff's intake photographs. Plaintiff was convicted at a hearing, and that conviction was upheld after a due process review by warden, Bobbi Butts. *Exhibit 4* This was significant because the charges involved institutionally created syringes and/or needles, which was a further violation of DOC policies. "As such patient is disqualified from antiviral medication treatment consideration until August 2024." *Exhibit 3, p. 91*

Plaintiff's condition continued to be monitored by the chronic care clinic through the remainder of 2023, and on October 2, 2024, the Plaintiff was approved for the medication "Mavyret" subject to the Plaintiff signing the "hepatitis C treatment agreement and plan", a clearly labelled DOC document, which Plaintiff executed on October 11, 2023. *Exhibit 3, p. 103, 115*

11

As stated above, it is undisputed that Plaintiff was assessed with a diagnosis of Hepatitis C and was being followed with regular assessments through the chronic care clinic. Under these facts it is likely that hepatitis C would likely be considered a severe medical condition according to the objective prong of the deliberate indifference test laid out in *Harrison, supra*.

The subjective component, by comparison, requires a showing that "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [he or she] did in fact draw that inference, and that [he or she] then disregarded that risk." *Comstock, supra.* In the instant case, the Plaintiff was constantly monitored in accordance with his chronic care plan for the duration of the subject period. He received regular blood tests, and even received vaccination against Hepatitis A and B. While Plaintiff may have preferred different treatment, he has provided no evidence that his treatment plan was "so inadequate as to amount to no treatment at all," *Id* and federal courts are generally reluctant to second-guess medical judgments where a prisoner has received some medical attention, and the dispute is over the adequacy of that treatment. *Alspaugh, supra.*

Additionally, it must be pointed out that the disciplinary action resulting in Plaintiff's exclusion from his preferred treatment, on two separate occasions, was a decision by the Adjustment Committee, upheld by the Warden, and based on the Plaintiff's own actions. No Wellpath employees were involved in that decision making process, nor did they have authority to override the authority of the DOC officers or Prison Warden. Plaintiff has been unable to point to any Wellpath policy or procedure which, by following same, caused Defendants to engage in acts or omissions amounting to deliberate indifference to his serious medical need in violation of his 8th Amendment rights. ("The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as Wellpath.") (citing *Street v. Corr.*

12

*Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)).  Therefore Plaintiff's official capacity claims against these moving Defendants should also be dismissed.

### C.      *No Expert Evidence.*

Plaintiff has presented no expert evidence to establish that the medical treatment at issue in this case was constitutionally inadequate. More proof is required than a Plaintiff's mere conclusory assertions of harm. See *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) (stating, "To go to trial on their Eighth Amendment claim, [Plaintiffs] needed to present medical proof from which a jury could find that their proposed treatment plan was necessary."); see also, *Phillips v. Tangilag,* 14 F.4th 524, 536 (6th Cir. 2021) (stating, "[Plaintiff] needed to present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so.") (Citations omitted).

Plaintiff has presented no expert testimony demonstrating what an allegedly competent medical provider would have done differently in the same circumstances. Nor does he have expert testimony, nor any medical records, to identify any grossly incompetent actions or inactions of Defendants. Simply put, the Plaintiff cannot point to any evidence demonstrating that any of the Defendants' conduct was grossly incompetent. Defendants are entitled to summary judgment on this basis alone. Even more, assuming arguendo that Plaintiff could establish that he received constitutionally inadequate medical treatment, he has no expert evidence nor other comparable medical evidence demonstrating that the alleged inadequate treatment caused him any injury. *King v. Alexander*, 574 F. Appx. 603, 606 (6th Cir. 2014) (providing that "failure to provide medical expert testimony to establish a causal link between injury and the allegedly inadequate treatment thus dooms the deliberate indifference claim").

13

Accordingly, Plaintiff's lack of expert testimony in this case is an independent basis upon which to grant summary judgment to Defendant Stone.

Here, even when the evidence and reasonable inferences therefrom are drawn in the Plaintiff's favor, Defendants are nonetheless entitled to summary judgment, as (1) Plaintiff failed to exhaust his administrative remedies (2) Plaintiff has failed to provide evidence of any act or omission of Defendants supporting his §1983 claims of deliberate indifference (3) Plaintiff received adequate medical treatment for his complaints and symptoms; (5) Plaintiff cannot point to expert or comparable medical evidence showing otherwise, as required; and (6) no reasonable jury could conclude that the subjective component is satisfied as applied to this Defendant.

## IV. CONCLUSION

The entirety of the record, and the foregoing, show that there are no genuine issues of material fact that require submission of Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs to a jury. Plaintiff did not exhaust all administrative remedies prior to filing suit; and his deliberate indifference claims are without support and without merit. The case against Defendants, KAREN RAMEY, RICH RICHARDS, and KEVIN SMITH, should, therefore, be dismissed with prejudice.

Respectfully submitted,

**KOPKA LAW GROUP**

/s/ *J. Matthew Tatman*
J. Matthew Tatman (KBA 91809)
301 E Main Street, Ste 750
Lexington, Kentucky 40507
(859) 368-8999 Tel
(859) 368-8772 Fax
jmtatman@kopkalaw.com
*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing has been electronically filed with this Court's e-filing system which will serve notice to all parties registered to receive same; and served via U.S. Mail as necessary to the parties listed below, on this 2nd day of April, 2026:

**James R. Patton**
261088
HOPKINS COUNTY JAIL
P.O. Box 1030
Madisonville, KY 42431
PRO SE

*/s/ J. Matthew Tatman (KBA# 91809)*

15